IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| TANYA TAPSON KLETT, | ) | CIVIL NO. 06-00400 SOM-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INTERNATIONAL CRUISE MANAGEMENT AGENCY A/S, ET AL., | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER DENYING PLAINTIFF'S COUNTER MOTION TO AMEND OR MODIFY SCHEDULING ORDER AND FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

Before the Court is Plaintiff Tanya Tapson Klett's ("Plaintiff") Counter Motion to Amend or Modify Scheduling Order and for Leave to File Third Amended Complaint ("Motion"), filed on May 29, 2007. This matter came on for hearing on July 6, 2007. Appearing on behalf of Plaintiff was David Harada-Stone, Esq. Robert G. Frame, Esq., and Mark S. Hamilton, Esq., appeared on behalf of Defendants Crystal Cruises ("CC") and International Cruise Management Agency A/S ("ICMA") (collectively "Defendants"). After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Plaintiff's Motion is HEREBY DENIED for the reasons set forth below.

**BACKGROUND**

The instant action arises out of medical conditions suffered by Plaintiff Tanya Tapson Klett ("Plaintiff") while she

was employed by Crystal Cruises ("CC").  Plaintiff joined CC on the M/S Crystal Serenity in 1999 as front office staff.  During the course of employment, she received three promotions: concierge, chief concierge and front office manager (relief). Since March 2001, Plaintiff has suffered a host of medical problems, including post-viral temporal lobe dysfunction; chronic fatigue syndrome ("CFIDS") with reactive hypoglycemia; post-viral fatigue syndrome; and a concussion.  In May 2004, Dr. W. G. Maxwell recommended that Plaintiff be medically boarded because of her inability to "cope with the mental and physical stress of her current position."  [Ex. F to Opp'n.].  In December 2004, another physician declared Plaintiff medically unfit for duty. [Ex. G to Opp'n.]  Defendants CC and International Cruise Management Agency A/S ("ICMA") (collectively "Defendants") allegedly represented that they would pay all necessary expenses for Plaintiff's medical treatment.  Plaintiff claims that Defendants paid one doctor's bill but another, totaling $7,551.98, remains unpaid.  By way of a letter dated April 22, 2005, the general manager for ICMA terminated Plaintiff.  In an email to Plaintiff on May 23, 2005, he informed her that no further medical expenses would be paid after April 22, 2005. Plaintiff claims that she is entitled to reimbursement for expenses incurred for her medical care pursuant to her Employment Agreement ("EA") with Defendants.

On May 15, 2006, Plaintiff filed a complaint in the Circuit Court of the Third Circuit, State of Hawai'i, alleging breach of contract, promissory estoppel, negligent and/or intentional misrepresentation and for unpaid wages under Hawai'i Revised Statutes ("HRS") §§ 388-10 and 11. Plaintiff filed a first amended complaint on June 20, 2006. On July 24, 2006, CC removed the action to federal court based on diversity of citizenship. Plaintiff again amended her complaint on December 14, 2006.

On April 18, 2007, Defendants filed a Motion to Enforce Collective Bargaining Agreement, or Alternatively, to Dismiss for *Forum Non Conveniens*.[1] In their motion, Defendants argue that Plaintiff is bound by the grievance procedure outlined in the "Basic Protocol" ("BP"), a collective bargaining agreement between ICMA and the Norwegian Seafarers' Union and that she should thus be required to arbitrate her claims in the Bahamas or Norway.

Plaintiff filed the instant Counter Motion to Amend or Modify Scheduling Order and for Leave to File Third Amended Complaint ("Motion") on May 29, 2007, by which she seeks to 1) assert a claim for seaman's wages under 46 U.S.C. § 10313, which provides a remedy in federal court notwithstanding an arbitration

---

[1] Judge Mollway is scheduled to hear the motion on July 23, 2007.

provision in a collective bargaining agreement and 2) to add International Cruise Services, Ltd. ("ICSL") as a party Defendant.  Plaintiff relies on § 10313 to support her position that she has a right to payment of all wages and benefits provided for in the EA.  Plaintiff first argues that she cannot be compelled to arbitrate under the BP because she was not a signatory to it nor is it referenced in the EA.  Moreover, the EA is silent as to binding arbitration.  Even assuming the BP was valid, however, Plaintiff argues that a contractual obligation to arbitrate claims cannot abrogate a statutory right to resolve wage claims in federal court.  Plaintiff acknowledges that she did not specifically reference § 10313 in her complaint, but asserts that her state law failure to pay wages claim under HRS §§ 388-10 and 11 is analogous.  As such, she contends that Defendants would not be prejudiced.

Plaintiff further notes that Defendants raised the provisions of the Basic Protocol as a bar to Plaintiff's claims for the first time in their motion and Defendants did not provide her with the Protocol until April 13, 2007.  [Ex. B to Mem. in Supp. of Mot.]  She additionally explains that service upon ICMA was delayed because service had to be effectuated in Norway.  According to Plaintiff, no substantive discovery has been conducted by any party.

Plaintiff secondly seeks to add ICSL as a party Defendant because Defendants, for the first time in their motion, have allegedly asserted that ICSL is a necessary party under Federal Rule of Civil Procedure 19.  For the reasons extended in her Motion, Plaintiff submits that she has shown good cause and an absence of prejudice to Defendants.

On June 15, 2007, Defendants filed their Opposition. As an initial matter, Defendants explain that Plaintiff's rights and duties were governed by the EA between her and ICSL and the Basic Protocol between ICSL and the union that represented seafarers.[2]  According to Defendants, Plaintiff paid dues to the union.  Defendants contend that Plaintiff signed the EA, which provides that any disputes or claims are governed by the laws of the Bahamas and the "agreed grievance procedure," a reference to a provision in the BP.  By signing the EA, Defendants maintain that Plaintiff knew or should have known that an agreed grievance procedure governed disputes.  They note that she has not claimed mistake, fraud or duress.  Additionally, they assert that she cannot claim that she did not know that her employment was subject to the BP or that she was unaware of the union's involvement in her employment.  Defendants insist that Plaintiff should not be relieved of her duty to abide by the EA because of her failure to inquire about and fully understand the terms of

---

[2]  ICSL provided seafarers for M/S Crystal Serenity.

the same.

In response to Plaintiff's argument that the EA does not specifically reference or incorporate the BP, Defendants counter that although the EA did not use the term "Basic Protocol," the EA included the phrase "agreed grievance procedure," and Plaintiff should have known what that meant. Defendant further argues that the EA and BP should be read together as one agreement, given that the BP states: "the following provisions shall apply to all Seafarers . . . in addition to their individual Employment Agreements." [Opp'n at 7 (citing Ex. C at ¶ 2).] Because of its claim that the BP controls, Defendants submit that Plaintiff must first exhaust her remedies under the EA/BP before seeking relief from the judicial system.

Defendants address Plaintiff's reliance on § 10313 by contending that § 10313 does not apply to foreign seamen who are discharged in a foreign port from a foreign vessel and applies to wages earned on a voyage, not to unearned wages following discharge from the vessel. Defendants explain that because Plaintiff was discharged in Rio De Janeiro (foreign port), she does not satisfy the provision in § 10313(I) that limits application to seamen on a foreign vessel when in the harbor of the United States.  Moreover, § 10313 requires that a seaman be engaged in a voyage aboard a vessel and Plaintiff has not

produced evidence that she was engaged in a voyage where she earned seaman's wages and was unpaid.  Defendants thus argue that Plaintiff is not entitled to statutory wages.  As such, any amendment to add § 10313 would be futile.

Defendants further assert that Plaintiff does not have good cause to amend for several reasons.  First, she knew the identity of ICSL at the time she filed her suit, as the EA states that it is an agreement between ICSL and Plaintiff.  Second, she has already twice amended her complaint.  Third, they have suffered prejudice as a result of her lack of diligence.  In particular, Defendants allege that Plaintiff incorrectly filed her Motion and has tactically done so to prevent them from properly responding.  As a sanction, Defendants suggest that the Court dismiss the Motion.

As their final argument, Defendants proffer that ICSL is not an indispensable party.  They contend that Plaintiff has failed to make a showing that she could not be afforded complete relief by the present defendants, nor has she shown that ICSL is a necessary party under Federal Rule of Civil Procedure 19(a)(ii).

On June 25, 2007, Plaintiff filed a Reply.  She argues that Defendants' substantial discussion about whether the EA incorporates the BP is currently before Judge Mollway in the motion to dismiss, but not material to the instant Motion.  In

response to Defendants' contentions, Plaintiff emphasizes that Defendants never provided her with a copy of the BP; she never had any contact with a representative of the Norwegian Seafarers' Union; Defendants never offered to arbitrate her demands for payments of benefits due under the EA; and no evidence exists that she was ever a member of the Union or considered herself to be a member.

Plaintiff additionally notes that Defendants did not terminate her until May 23, 2005, at which time she resided in Kona, Hawai`i.  For the purposes of § 10313, Plaintiff claims that "discharge" is the cessation of employment in a U.S. harbor. She proffers that § 10313 thus applies to her claim and any proposed amendment is not futile, as she was "discharged" (that is, terminated), while a resident of Hawai`i, which satisfies the U.S. harbor requirement.

Plaintiff next emphasizes that Defendants failed to respond to her assertion that they raised the issue of the BP acting as a bar to her claims for the first time in their motion to dismiss.  According to Plaintiff, Defendants only provided her with a copy of the BP on approximately April 13, 2007, long after initial disclosures were due.  What is more, Defendants first asserted that ICSL is a necessary party within the meaning of

Rule 19 in their motion to dismiss.[3]

Plaintiff additionally expresses confusion over Defendants' claim that they were prejudiced by her incorrect filing of the Motion.  She explains that she initially raised this Motion along with her opposition to Defendants' motion to dismiss; that this Motion was then separated out and set for hearing in due course; Defendants' motion was continued more than a month; and the parties were given leave to file supplemental memoranda for the motion to dismiss.  Although Plaintiff admits that her counsel experienced some difficulty with cmecf, she notes that Defendants too delayed filings because of issues with cmecf.

## DISCUSSION

Insofar as the deadline for amending the pleadings has passed, Plaintiffs must move to amend the scheduling order in order to amend their Complaint.  A scheduling order "shall not be modified except upon a showing of good cause and by leave of . . . a magistrate judge."  Fed. R. Civ. P. 16(b).  The good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order; if the party seeking the modification was not diligent, the motion should be denied.  See Zivkovic v. S.

---

[3] Although Defendants argue that Plaintiff has failed to demonstrate that ICSL is a necessary party, according to Plaintiff, they alleged in their motion to dismiss that ICSL is a necessary party.

Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002).  "The pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"  Id. (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)).  Prejudice to the non-moving party may serve as an additional reason to deny the motion, but the lack of prejudice to the non-moving party does not justify granting the motion if the moving party was not diligent.  See Johnson, 975 F.2d at 609.

Even if the Court grants leave to modify the scheduling order, Plaintiffs must also establish that amendment is appropriate under Federal Rule of Civil Procedure 15(a).  See Johnson, 975 F.2d at 608 (citing Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D.N.C. 1987); Fin. Holding Corp. v. Garnac Grain Co., 127 F.R.D. 165, 166 (W.D. Mo. 1989)).  Under Rule 15(a) of the Federal Rules of Civil Procedure, once an answer or responsive pleading has been filed, the plaintiff must obtain leave of court or the written consent of the defendant to amend the complaint. Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  The determination whether a party should be allowed to amend a pleading is left to the discretion of the court.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971) (citation omitted).  If the facts or circumstances a plaintiff relies upon may be the basis of relief,

she should be afforded an opportunity to test her claim on the merits.  See Foman v. Davis, 371 U.S. 178, 182 (1962). Furthermore, in exercising its discretion to grant leave to amend, a court "'should be guided by the underlying purpose of Rule 15(a) . . . which was to facilitate decisions on the merits, rather than on technicalities or pleadings.'"  In re Morris, 363 F.3d 891, 894 (9th Cir. 2004) (quoting James v. Pliler, 269 F.3d 1124, 1126 (9th Cir. 2001)) (alteration in original).

        Courts may consider factors such as: bad faith or dilatory motive on the movant's part; whether the amendment will cause undue delay; whether it will prejudice the opposing party; futility of the amendment; and whether the movant has already failed to cure deficiencies in prior amendments of her pleadings. See Foman, 371 U.S. at 182; Morris, 363 F.3d at 894 (citation omitted).  Not all of these factors carry equal weight; prejudice to the opposing party is the most persuasive factor.  See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted).  The party opposing the motion for leave to amend bears the burden of establishing prejudice.  See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987) (citing Beeck v. Aqua-slide 'N' Dive Corp., 562 F.2d 537, 540 (8th Cir. 1977)).  If there is neither prejudice to the opposing party nor a strong showing of the remaining factors, there is a presumption in favor of granting leave to amend.  See Eminence,

316 F.3d at 1052 (citing Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 245 (5th Cir. 1997)).

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). An amendment is futile when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted).

In this case, Plaintiff has failed to satisfy the good cause requirement mandated by Rule 16(b). Plaintiff already amended her Complaint twice, most recently on December 14, 2006, and the deadline for joining additional parties or amending the pleadings was February 16, 2007.

Plaintiff knew ICSL's identity even prior to the commencement of the instant action. Indeed, the signature page of the EA expressly indicates that the contract is between ICSL and Plaintiff. [Ex. A to Mem. in Supp. of Mot.] The fact that Defendants first asserted that ICSL is a necessary party in their motion to dismiss is negligible. This Court is thus precluded from finding that good cause exists. Regarding Plaintiff's request to add a § 10313 claim, the Court likewise finds that Plaintiff has not shown good cause for the proposed amendment.

Even if Plaintiff had shown good cause, however, her §

10313 claim would be futile. Section 10313 of Title 46 of the United States Code, known as the Seaman's Wage Act ("SWA"), "protects seafarers by ensuring they receive timely payment of wages"; that is, "prompt payment of wages at the completion of a voyage." Su v. M/V Southern Aster, 978 F.2d 462, 467 (9th Cir. 1992). In particular, § 10313(f), (g) provides:

> At the end of a voyage, the master shall pay each seaman the balance of wages due the seaman within 24 hours after the cargo has been discharged or within 4 days after the seaman is discharged, whichever is earlier. . . . When payment is not made . . . without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed.

46 U.S.C. § 10313(f), (g). Recovery under this provision requires that "(1) the voyage ended, (2) either the cargo or the seafarer has been discharged, and (3) payment was withheld without sufficient cause." Su, 978 F.2d at 468. Also relevant is the jurisdictional provision which extends protections to seafarers on foreign ships when in a U.S. harbor. Id. (quoting 46 U.S.C. § 10313) ("This section applies to a seaman on a foreign vessel when in a harbor of the United States."). Indeed, the Ninth Circuit, in reliance on the principle that United States statutes apply only within the territorial jurisdiction of the United States, has held that this section "should not apply to foreign seafarers discharged from foreign ships in foreign ports." Id. at 470.

Plaintiff asserts that because she resided in Hawai‘i at the time she was terminated, i.e. discharged, she satisfies the jurisdictional requirement that discharge must occur in a U.S. harbor.  Defendants contend that Plaintiff was discharged in Rio De Janeiro, Argentina.  "A seaman who is forced to leave his ship because of injury requiring medical treatment is deemed 'discharged' under the Seaman's Act."  <u>Vidovic v. Losinjska Plovidba Oour Broadarstvo</u>, 868 F. Supp. 691, 694 (E.D. Pa. 1994) (citing <u>Cerda v. YEletson Maritime Corp.</u>, 515 F. Supp. 883, 886 (E.D. Pa. 1981)).  Given that Plaintiff left the ship to treat post-viral temporal lobe dysfunction, CFIDS, and resulting medical issues such as depression, it appears that she was "discharged," for the purposes of § 10313, in a foreign port.  Consequently, she cannot satisfy the jurisdictional requirement required to establish a claim under § 10313 and any amendment would be futile.

## **CONCLUSION**

Based on the foregoing, the Court DENIES Plaintiff's Counter Motion to Amend or Modify Scheduling Order and for Leave to File Third Amended Complaint, filed on May 29, 2007.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, July 10, 2007.



   /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**TANYA TAPSON KLETT V. INTERNATIONAL CRUISE MANAGEMENT AGENCY A/S, ET AL; CIVIL NO. 06-00400 SOM-LEK; ORDER DENYING PLAINTIFF'S COUNTER MOTION TO AMEND OR MODIFY SCHEDULING ORDER AND FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**